UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE L. C.,

    Plaintiff,     Case No. 2:22-cv-12281
            District Judge George Caram Steeh
v.          Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND (ECF No. 18), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 22), and AFFIRM THE COMMISSIONER'S DECISION

**I.**  **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment or remand (ECF No. 18), **GRANT** Defendant's motion for summary

judgment (ECF No. 22), and **AFFIRM** the Commissioner's decision.

**II.**  **REPORT**

  Plaintiff, Nicole L. C., brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security (Commissioner)

denying her applications for disability insurance (DI) and supplemental security

income (SSI) benefits under Titles II and XVI of the Social Security Act.  This

matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment or remand (ECF

No. 18), the Commissioner's cross-motion for summary judgment (ECF No. 22),

and the administrative record (ECF No. 10).

## A.    Background and Administrative History

By way of background, Plaintiff sought SSI benefits in October 2006 and

October 2010, in each case alleging disability beginning May 31, 2003.  (ECF No.

10, PageID.126.)  On August 14, 2009, ALJ Yvonne K. Stam issued a decision

denying benefits, and on September 23, 2011, ALJ Christopher Ambrose issued a

decision denying benefits.  (*Id*., PageID.123-135.)

In February and March 2019, Plaintiff applied for DI and SSI benefits.

(ECF No. 10, PageID.281-284, 285-291.)  Plaintiff alleges her disability began in

January 2019, at the age of 37.  (*Id*., PageID.281, 285.)  In her disability report, she

lists several conditions (non-epileptic seizures, fibromyalgia, migraines, spinal

stenosis, degenerative disc disease (DDD), depression, anxiety, diabetes, allergies,

comprehension, irritable bowel syndrome (IBS), asthma, borderline personality

disorder, and eczema) as limiting her ability to work.  (*Id*., PageID.316.)

Plaintiff's applications were denied in August 2019.  (*Id*., PageID.136-154,

158-166.)  Plaintiff requested a hearing by an Administrative Law Judge (ALJ).

(*Id*., PageID.167.)  On August 16, 2021, ALJ Robert J. Tjapkes held a hearing, at

2

which Plaintiff and a vocational expert (VE), Paul Delmar, Ph.D., testified.  (*Id.*, PageID.96-121.)  On September 7, 2021, ALJ Tjapkes issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.*, PageID.67-95.)

On September 27, 2021, Plaintiff submitted a request for review of the hearing decision/order.  (*Id.*, PageID.276-279.)  However, on September 6, 2022, the Appeals Council denied Plaintiff's request for review.  (*Id.*, PageID.32-38.)  Thus, ALJ Tjapkes's decision became the Commissioner's final decision.  Plaintiff timely commenced the instant action on September 27, 2022.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 3,192 pages of medical records, seemingly dated January 2018 to July 2021.  (ECF No. 10, PageID.386-3581 [Exhibits C1F-C41F]).  These materials were available to the ALJ at the time of his September 7, 2021 decision (*id.*, PageID.92-95), and will be discussed in detail, as necessary, below.[1]

### C.    The September 7, 2021 Administrative Decision

---

[1] At some point, Plaintiff submitted medical records dated February 9, 2022 to May 31, 2022 (ECF No. 10, PageID.39-60); however, because these records post-dated the ALJ's September 7, 2021 decision, the Appeals Council determined the "additional evidence d[id] not relate to the period at issue."  (ECF No. 10, PageID.33).

3

Pursuant to 20 C.F.R. § 404.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 21, 2019, the application date.  (ECF No. 10, PageID.72.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  cervical, thoracic, and lumbar DDD; seizure disorder; migraines; asthma; allergies; obesity; posttraumatic stress disorder (PTSD); borderline personality disorder; depression; anxiety; cannabis use disorder; and alcohol use disorder.  (*Id*., PageID.73.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*., PageID.73-78.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[2] and determined that Plaintiff had the RFC:

> . . . to perform sedentary work [*i.e., exertional limitations*] . . . except that the claimant cannot climb ladders, ropes, or scaffolds [*i.e., postural limitations*] or work around hazards such as unprotected heights or unguarded, moving machinery [*i.e., environmental limitations*].  The claimant can occasionally crouch, crawl, kneel, stoop, and climb ramps and stairs [*i.e., postural limitations*].  The claimant cannot perform commercial driving [*i.e., environmental limitation*].  She cannot be exposed to atmospheric conditions as defined in the *Selected Characteristics of Occupations*, cold, hea[t], and humidity [*i.e., environmental limitations*].  The claimant can understand, remember, and carry out simple instructions and tasks.

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

4

> The claimant can occasionally interact with coworkers, supervisors, and the public [*i.e., social interaction limitations*].  She cannot work at a fast paced or production rate work [*i.e., sustained concentration and persistence limitations*].

(*Id.*, PageID.78-86.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (*Id.*, PageID.87.)  Then, at **Step 5**, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as inspector (DOT 726.684-110), laminator (DOT 690.685-258), and final assembler (DOT 713.687-018).  (*Id.*, PageID.87-88.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since February 21, 2019, the date the application was filed.  (*Id.*, PageID.88.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the

6

merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff's motion purports to present a single issue on appeal – "The ALJ

failed to create an accurate [RFC] assessment[,] as it is not supported by

substantial evidence, and therefore, resulted in an erroneous Step Five

determination[,]" (ECF No. 18, PageID.3597); yet, the brief's argument further

specifies the ALJ's alleged failure to consider:  (1) use of cane; (2) limitations with

neck flexion, rotation, and extension; and, (3) manipulative limitations of

fingering, handling, and feeling[;]" if not also (4) sitting limitations.  (*Id*.,

PageID.3599-3604, 3608-3611.)  Amidst these arguments, Plaintiff also alleges the

ALJ failed to consider "being off task, absent and/or needing extra breaks[.]"  (*Id*.,

PageID.3599, 3604-3608.)

The Commissioner acknowledges these multiple "challenges," preliminarily

contending that most of them have "common deficiencies . . . [,]" (ECF No. 22,

PageID.3623), but then addressing each individually (*id*., PageID.3624-3651).

### 1.    The RFC determination (20 C.F.R. §§ 404.1545, 416.945 & SSR 96-8p)

#### a.    Cane

Plaintiff argues the ALJ "neglected to account for her cane use within his

RFC assessment."  (ECF No. 18, PageID.3599-3603.)  Within the RFC

7

determination, the ALJ referenced Plaintiff's testimony that "she used a cane . . .

[,]" (ECF No. 10, PageID.79), which, presumably, is a reference to Plaintiff's

testimony that she walks with a cane most of the time and has "a four-wheeled

walker with brakes that [she] can use on [her] bad days[,]" (*id*., PageID.116).  The

ALJ then considered medical records concerning Plaintiff's "cervical, thoracic, and

lumbar [DDD]," including, but not necessarily limited to, the following references

to a cane or assistive device or gait:

- "Occasionally, the claimant used a cane and exhibited a decreased sensation; a positive Romberg sign; a decreased range of motion; and a painful gait.  However, the claimant often exhibited a normal gait without use of an assistive device; normal inspection of the joints, bones, and muscles; 5/5 strength; no edema; normal muscle tone and coordination; normal deep tendon reflexes; a negative Romberg sign; intact sensation with the ability to walk on her tip toes; and a negative straight leg raise[.]"  (ECF No. 10, PageID.80 (numerous citations omitted).)

- In March 2019, Plaintiff had "a normal gait[.]"  (*Id*., PageID.80 (*citing id*., PageID.838).)

- In May 2019, Plaintiff reported she "was able to walk almost 2 miles without back pain . . . ."  (*Id*., PageID.80 (*citing id*., PageID.884).)

- "Initial physical therapy notes [dated July 2020] indicated she used a back brace and a quad cane when she was outside of her home[,]" and she exhibited "impaired balance and gait . . . ." (*Id*., PageID.81 (citing *id*., PageID.2594, 2596).)

- "[S]hortly after," *i.e.*, citing notes dated July 2020 to October 2020, "the claimant reported times of little to no pain while

8

exhibiting a normalized gait pattern . . . ."  (*Id*., PageID.81 (*citing id*., PageID.2678, 2734, 2813, 2840, 2868, 2896, 2993, 3048).)

- "[S]hortly after," *i.e.*, in September 2020, "her examination was unremarkable with a normal gait and no use of an assistive device." (*Id*., PageID.81 (*citing id*., PageID.1350-1352 ["Steady and even, able to heal-toe walk"]).)

- In December 2020, Plaintiff "was walking for 30 minutes a day 4 times a week[,]" and, upon examination, "exhibited a normal gait without any indication of an assistive device[.]" (*Id*., PageID.81 (*citing id*., PageID.3440, 3447, 3455).)

Moreover, in other parts of the ALJ's RFC determination, the ALJ noted that, during a February 2021 visit to the emergency department, "[e]mergency staff noted that the claimant moved without difficulty and ambulated with a cane to the bathroom without difficulty[,]" (ECF No. 10, PageID.82 (*citing id*., PageID.3210)), and also treated as vague Plaintiff's neurosurgeon's (Mark Adams, M.D.'s) opinion that "patient may use assistive device if needed," (*id*., PageID.86, 3507).

Plaintiff's cane-related argument is unavailing, for several reasons.  First, to the extent Plaintiff relies upon the July 14, 2021 MSS of Dr. Mark Adams / Evan McCann, the ALJ found this opinion to be "unpersuasive . . . [,]" (*id*., PageID.86), and Plaintiff's present appeal does not challenge the ALJ's treatment of the opinion evidence under 20 C.F.R. §§ 404.1520c, 416.920c.  (*See* ECF No. 18, PageID.3600-3601 (citing ECF No. 10, PageID.3507, 3508).)

Second, Plaintiff points to:

9

- Numerous medical records, ranging from August 2019 to February 2021, that indicate Plaintiff's use of a cane, whether straight or quad.[3]

- In August 2019, her gate was noted to be "[s]teady and uses cane." (*Id.*, PageID.1370.)

- However, by January 2020, she was "[p]resent with cane," and had a "stooped gait[.]" (*Id.*, PageID.1362, 1389; *see also id.*, PageID.1156.)

- In October 2020, her gait was noted to be "[a]ntalgic left [s]low, foot drop present on left." (*Id.*, PageID.1331.)

- Dr. Adams's notes from a July 2020 visit, when Plaintiff seems to have reported that "[p]rolonged standing or walking is no go for her without a cane or walk[er][,]" although her gait was noted to be "[s]teady and even[.]" (*Id.*, PageID.1353-1354, 1380-1381.)

- July 2020 physical therapy notes that "[a]l motions are cautious and slow and gait with quad cane remains antalgic." (*Id.*, PageID.2653.)

- In September 2020, Plaintiff reported "trying to ambulate without her cane, but if she is fatigued, she carries it." (*Id.*, PageID.2896, 2900.)

- In October 2020, Plaintiff reported "she had some numbness through her hand and dropped her cane. Once she dropped her cane her knees gave out and she fell." (*Id.*, PageID.3077.)

---

[3] *See*: (a) August 2019 (ECF No. 10, PageID.1099, 1397); (b) November 2019 (*id.*, PageID.1393); (c) January 2020 (*id.*, PageID.1389); (d) July 2020 (*id.*, PageID.2594 [quad cane]); (e) August 2020 (*id.*, PageID.2707); (f) October 2020 (*id.*, PageID.1331 [straight cane]; (g) November 2020 (*id.*, PageID.1324 [straight cane]); (h) December 2020 (*id.*, PageID.1318 [straight cane]); and, (i) February 2021 (*id.*, PageID.1346-1347, 1373-1374, 3210). *See also* ECF No. 10, PageID.1035 [straight cane], 1164, 1161, 1366, 1156, 2604, 2678 [quad cane].)

- In May 2021, she reported "having episodes where she trips or drags her toes on the right side[,]" (ECF No. 10, PageID.3544), and she exhibited "lower extremity weakness" and "painful gait," (ECF No. 10, PageID.3547, 3552).

- Her August 16, 2021 testimony that she "walk[s] with a cane most of the -- well, all the time, I should say, and then I have a four-wheeled walker with brakes that I can use on my bad days." (ECF No. 10, PageID.116.)

(ECF No. 18, PageID.3600-3601.)  Notwithstanding these references, the Commissioner aptly points to the Sixth Circuit's guidance that "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  (*See* ECF No. 22, PageID.3625-3626.)  Here, "there was more than enough evidence to support the ALJ's finding." *Jones*, 336 F.3d at 477.

Third, Plaintiff mentions SSR 96-9P, which provides, in part:  "To find that a hand-held assistive device is *medically required*, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."  SSR 96-9P, 1996 WL 374185, *7 (S.S.A.

11

July 2, 1996) (emphasis added).  Plaintiff acknowledges that use of a cane "will

not necessarily preclude sedentary work . . . [,]" as "most unskilled sedentary work

requires only occasional lifting and carrying of light objects such as ledgers and

files and a maximum lifting capacity for only 10 pounds, an individual who uses a

*medically required* hand-held assistive device in one hand may still have the ability

to perform the minimal lifting and carrying requirements of many sedentary

unskilled occupations with the other hand."  *Id*., 1996 WL 374185, *7 (emphasis

added).  (ECF No. 18, PageID.3601.)  Yet, as the Commissioner notes, Dr.

Adams's MSS statement that "patient may use assistive device if needed[,]" (ECF

No. 10, PageID.3507), does not establish the requisite *need* under SSR 96-9p.

(ECF No. 22, PageID.3626.)  Nor do Plaintiff's *reports* of using a cane to her

doctors move the needle to medical necessity.  Relatedly, Plaintiff contends she

"would be unable to use her opposite hand to lift and carry objects while her other

hand holds the cane due to symptoms of chronic pain, numbness, tingling, and

weakness of her full upper extremities, plus loss of grip strength."  (ECF No. 18,

PageID.3601 (numerous medical record citations omitted).)  Not only does this

particular argument bear great similarity to Plaintiff's argument below that her

impairments warrant manipulative limitations (*compare* ECF No. 18,

PageID.3601-3603; *with*, *id*., PageID.3609-3610), but also, as the Commissioner

convincingly notes, "Plaintiff failed to establish that her RFC needed to include a

12

limitation for cane usage," therefore, "whether she could lift and carry with the other hand is immaterial."  (ECF No. 22, PageID.3626.)

Finally, to the extent Plaintiff contends "[t]he ALJ failed to question the VE on how the use of an assistive device for balance, ambulation and/or both would impact jobs in the national economy, so it is impossible to know how any inclusion of an assistive device would impact Ms. [C.]'s RFC assessment and her ability to perform sedentary work[,]" (ECF No. 18, PageID.3603), "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals," *Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) (citation omitted), and Plaintiff's counsel stated at the hearing that he had "[n]o follow-up questions . . . ." (ECF No. 10, PageID.120.)  Thus, "[P]laintiff's counsel had the opportunity to cross-examine, but . . . did not probe the deficiency now identified on appeal." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 982 (6th Cir. 2011).

### b.   Neck limitations

Plaintiff argues that the ALJ "did not account for [her] neck limitations despite finding that her cervical [DDD] is a severe impairment."  (ECF No. 18, PageID.3603-3604.)  After finding at Step II that cervical DDD was among Plaintiff's severe impairments (ECF No. 18, PageID.73), the ALJ dedicated two single-spaced pages of the RFC discussion to the medical records regarding DDD, within which there are multiple references to "cervical radiculopathy" and

13

"cervical spine" references.  (*See id.*, PageID.79-80, 871 [April 2019 EMG study],

1335-1336 [June 2020 cervical spine MRI], 3515 [August 2020 EMG and nerve

conduct study report], 1347 [January 2021 MRI cervical spine], 3211 [February

2021 CT Cervical spine without contrast].)  (ECF No. 10, PageID.79-80.)

Ultimately, the ALJ included several postural limitations – *i.e.*, "cannot climb

ladders, ropes, or scaffolds" and "can occasionally crouch, crawl, kneel, stoop, and

climb ramps and stairs[,]" (ECF No. 10, PageID.78) – within Plaintiff's RFC.

　　　Plaintiff supports her argument with references to:  (i) various "[o]bjective

physical exams not[ing] abnormal range of motion of the neck with pain at various

appointments[;]" (ii) her complaints "about neck pain and neck pain with specific

movements," as well as assessments of "neck pain[;]" and, (iii) her testimony that,

when she washes her hair, she cannot put her head back to rinse out [h]er hair[,]

because [she] get[s] dizzy[,]" (*id.*, PageID.113).  (ECF No. 18, PageID.3603

(lengthy citations omitted).)  Yet, to the extent Plaintiff intended to challenge the

ALJ's treatment of neck (or cervical) related records or subjective complaints, the

Court agrees that Plaintiff "fails to engage with the ALJ's analysis of the evidence

and simply cites other evidence that [Plaintiff] claims support[s] further

restrictions."  (ECF No. 22, PageID.3623.)  Finally, to the extent Plaintiff takes

issue with the ALJ not inquiring "about neck flexion, rotation, and extension when

he questioned the VE[,]" (ECF No. 18, PageID.3603), Plaintiff's counsel stated at

14

the hearing that he had "[n]o follow-up questions . . . ."  (ECF No. 10, PageID.120.)  *See Sims*, 406 F. App'x at 982.  If Plaintiff was dissatisfied with the ALJ's questioning of the VE, then her counsel could have explored the effect of Plaintiff's ability to "look down at documents or parts, straight ahead at a computer, or side to side" upon sedentary occupations by posing questions to and eliciting testimony from the VE "regarding neck movements[.]"  (ECF No. 18, PageID.3604.)

### c.    Manipulative limitations

Plaintiff takes issue with the ALJ's failure to include manipulative limitations on fingering, handling and/or feeling (ECF No. 18, PageID.3608-3611), contending that certain diagnosed impairments – *i.e.*, epilepsy/seizure, wrist median nerve mononeuropathy, CTS, diabetes with diabetic polyneuropathy, and cervical radiculopathy – result in symptoms – *e.g.*, numbness, tingling, pain, weakness, shaking and jerking in her bilateral upper extremities – which significantly limit her ability to use her arms and hands for holding, fingering, handling, and feeling."  (*Id.*, PageID.3609 (citations omitted).)

Plaintiff unavailingly challenges the ALJ's statement that he "considered all the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity[,]" (ECF No. 10, PageID.73).  (ECF No. 18, PageID.3609.)  To begin, at Step II, the ALJ

determined that Plaintiff's seizure disorder was a severe impairment but that Plaintiff's non-severe impairments include right carpal tunnel syndrome (CTS) and diabetes mellitus, explaining as to "right [CTS], studies only found mild findings while she was only treated with wearing braces at night ([ECF No. 10, PageID.884, 3516])[,]" and, as to "diabetes mellitus, this impairment was considered to have good control without complication ([*Id.*, PageID.436, 458, 466, 857, 929, 1111, 3416, 3431])."  (ECF No. 10, PageID.73.)[4]  Then, within the RFC discussion, the ALJ considered the April 24, 2019 EMG, which demonstrated evidence "*consistent with* a very mild [CTS][,]" bilaterally, but "no electrodiagnostic evidence for a Cervical Radiculopathy . . . [,]" (*id.*, PageID.79 (emphasis added), 871),[5] and the ALJ addressed strength (*id.*, PageID.80-81), as well as Plaintiff's seizure disorder and migraines, noting they "cause some degree of limitation, but not to the extent alleged[,]" (*id.*, PageID.81-82), including the following references:

> In August of 2020, the claimant reported she experienced 3 seizures in the last months with some myoclonic jerking, but experienced no side effects or other new, focal, or generalized neurological symptoms. Her treatment continued, with consideration of Vriviacet for

---

[4] The ALJ also cited C28F/9, but that exhibit only contains 6 pages.  Instead, it appears the ALJ intended to reference C38F/9 (ECF No. 10, PageID.3517).

[5] Additionally, the Court's own review reveals that state agency medical consultant Twaide Langham, D.O.'s July 21, 2019 physical RFC assessment determined that Plaintiff did not have manipulative limitations.  (ECF No. 10, PageID.149.)

> myoclonus – this providing some benefit for a short time ([ECF No.
> 10, PageID.2868, 2886, 3509-3523]).
>
> Upon examination [in February 2021], she exhibited generalized
> weakness and an abnormal finger to nose.  However, despite being
> alert and oriented, the emergency staff noted she was a difficult
> historian.  She exhibited no cranial nerve deficit or fascial asymmetry.
> Emergency staff noted that the claimant moved without difficulty and
> ambulated with a cane to the bathroom without difficulty ([*id*.,
> PageID.3210]).

(*Id*., PageID.82.)  Moreover, the RFC discussion twice mentions the consultative

psychological examination for its observation, *inter alia*, that "[t]here was no

unusual motor activity or hyperactivity[,]" (ECF No. 10, PageID.974, 84, 84) and

contains numerous references to pain (*see id.*, PageID.79-81, 83, 85-86).  Thus, the

ALJ's RFC determination mentioned some of the symptoms – namely, jerking,

weakness, and pain – identified in her manipulative limitations argument.

More to the point, Plaintiff's manipulative limitations argument "fails to

engage with the ALJ's analysis of the evidence and simply cites other evidence

that she claims support[s] further restrictions[,]" (ECF No. 22, PageID.3623), other

than citing the ALJ's Step II discussion and RFC conclusion (ECF No. 10,

PageID.73, 78).  (*See* ECF No. 18, PageID.3609-3610.)  To the extent Plaintiff

bases this argument on her "diagnosed impairments," such as cervical DDD and

seizure disorder (each severe impairments) and her right CTS and diabetes mellitus

(each non-severe impairments), "disability is determined by the functional

limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014).  (ECF No. 22, PageID.3647.)

To the extent Plaintiff contends these impairments "result in symptoms which significantly limit her ability to use her arms and hands for holding, fingering, handling, and feeling[,]" providing three non-descript page citations (*see* ECF No. 18, PageID.3609), or to the extent Plaintiff similarly supports her claims of "numbness, tingling, pain, weakness, shaking and jerking in her bilateral upper extremities[,]" and of "objective physical examinations" revealing "intermittent myoclonic jerking activity of bilateral arms" with long string citations, in a manner remarkably similar to her earlier argument about cane use (*compare* ECF No. 18, PageID.3601-3602; *with*, ECF No. 18, PageID.3609-3610), these points are either undeveloped or "veiled attempt[s] to have [the Court] reweigh the evidence." *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022).

To the extent Plaintiff claims the ALJ did not account for limitations related to the August 2020 EMG, which revealed "evidence of mild right median nerve mononeuropathy at the wrist, suggestive of clinical diagnosis of [CTS][,]" (ECF No. 18, PageID.3610 (citing ECF No. 10, PageID.3516)), as noted above, the ALJ addressed this piece of evidence at Step II with respect to right CTS, noting "studies only found mild findings while she was only treated with wearing braces

18

at night . . . [,]" (ECF No. 10, PageID.73), and the RFC discussion refers to the more recent April 24, 2019 EMG study for its conclusion of consistency with "mild [CTS] . . . [,]" (*id*., PageID.79, 871). And, to the extent Plaintiff cites her administrative hearing testimony (*id*., PageID.109-110, 113) or her function report (*id*., PageID.336, 340), it is an undeveloped attempt to challenge the ALJ's finding that Plaintiff's "symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id*., PageID.79.)

Finally, to the extent Plaintiff takes issue with the ALJ not questioning the VE "about manipulative limitations[,]" (ECF No. 18, PageID.3610-3611), the Court recognizes that the VE's hypothetical question "must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); however, Plaintiff's manipulative limitations argument has not shown that such questioning was warranted. Moreover, Plaintiff's counsel stated at the hearing that he had "[n]o follow-up questions . . . ." (ECF No. 10, PageID.120.) Thus, "[P]laintiff's counsel had the opportunity to cross-examine, but . . . did not probe the deficiency now identified on appeal." *Sims*, 406 F. App'x at 982.

### d. Sitting requirements

Plaintiff contends she is "unable to perform even the sitting requirements of sedentary work, which is generally six hours of an eight-hour workday." (ECF No.

19

18, PageID.3611 (citing SSR 83-10).)  In the written decision, the ALJ

acknowledged Plaintiff's function report, in part for the representation that her

"illnesses, injuries, or conditions affect" her "sitting."  (ECF No. 10, PageID.79,

340.)  The ALJ cited multiple spinal MRIs, namely tests dated May 2019 (*id.*,

PageID.869), June 2020 (*id.*, PageID.1334-1336), and December 2020 and January

2021 (*id.*, PageID.1347), noting several results that were "unremarkable," "mild,"

or "moderate."  (*Id.*, PageID.79-80.)  Although the ALJ noted "[d]ecreased

strength" in July 2020 (*see* ECF No. 10, PageID.2596), the ALJ also made multiple

references to Plaintiff's strength being 4/5 to 5/5 and various references to straight

leg tests, some positive and some negative.  (*Id.*, PageID.80-81.)  The ALJ further

acknowledged the physical medical source statement (MSS) of Dr. Mark Adams /

Evan McCann, treating as "vague" the opinion that Plaintiff could "sit/stand/walk

as tolerated[,]" before summarizing that "a combination of the claimant's severe

physical impairments would limit the claimant to the sedentary exertional level

with the postural limitations noted above."  (ECF No. 10, PageID.86, 3506.)

In support of this argument, Plaintiff:  (i) contends "sitting for too long

increases her pain and numbness . . . [,]" (citing ECF No. 10, PageID.1353, 1380,

3549); (ii) contends "laying down is her preferred position and sitting aggravates

her pain[,]" (citing ECF No. 10, PageID.1315, 1318, 1321, 1350, 1364, 1368); and,

further (iii) points to her testimony that she has "to lay down most the day because

20

sitting hurts, standing hurts, walking hurts[,]" (citing ECF No. 10, PageID.115). (ECF No. 18, PageID.3611.)  Plaintiff also cites certain pieces of objective evidence, such as:  (i) musculoskeletal, spinal, or neurological exams, which allegedly show "tenderness in her lower back, limited range of motion with pain, weakness in lower extremities, and positive straight leg raise[,]" (ECF No. 10, PageID.1370, 1351, 1347, 3542, 3547, 3552); and, (ii) an August 12, 2020 EMG and Nerve Conduct Study Report, for its observation of "severe chronic lumbar radiculopathy at left side L5/S1 level . . . ."  (*id*., PageID.3515).  (ECF No. 18, PageID.3611.)

Nonetheless, as the Commissioner notes, "Plaintiff fails to explain how any of the [these] findings show that she could not perform the sitting required for sedentary work . . . [,]" and this argument is "merely an impermissible attempt to have the Court reweigh the evidence . . ." discussed in the ALJ's RFC decision regarding Plaintiff's DDD (*see* ECF No. 10, PageID.79-81).  (ECF No. 22, PageID.3650.)

### 2.   Evaluation of symptoms (20 C.F.R. §§ 404.1529, 416.929 & SSR 16-3p)

Plaintiff argues that the ALJ "failed to take Ms. C[.]'s symptoms into consideration when formulating the RFC, directly violating SSR 16-3p," or, more specifically, "did not account for time off task, a need for extra breaks, and/or absenteeism" which would occur from "symptoms associated with her mental

impairments," "fatigue from any impairments," "medication side effects," and "her seizures." (ECF No. 18, PageID.3599, 3604-3608.)

Preliminarily, to the extent Plaintiff acknowledges that the ALJ asked the VE about "missing four or more days per month . . . [,]" but "failed to address time off task and extra breaks with the VE, so one is left to wonder what percentage of time off task is work preclusive as well as whether extra breaks are allowed in jobs[,]" (ECF No. 18, PageID.3604), Plaintiff's counsel stated at the hearing that he had "[n]o follow-up questions . . . ." (ECF No. 10, PageID.120.) *See Sims*, 406 F. App'x at 982. If Plaintiff was dissatisfied with the ALJ's questioning of the VE, then her counsel could have explored "time off task" and "extra breaks" by posing related questions and eliciting testimony.

### a.   The ALJ's treatment of subjective symptoms

At various points in the written September 7, 2021 decision, the ALJ referenced Plaintiff's hearing testimony and her function report. (ECF No. 10, PageID.72, 76, 77, 79, 84.) At the outset of the RFC discussion, the ALJ explained that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." (*Id*., PageID.78.) The ALJ then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not

22

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision[,]" after which he made several references to consistencies or inconsistences in the record.  (*Id.*, PageID.79-80, 84-86.)[6]

### b.    Symptoms associated with her mental impairments

After identifying PTSD, borderline personality disorder, depression, anxiety, cannabis use disorder, and alcohol use disorder as severe at Step II (ECF No. 10, PageID.73), and after concluding that Plaintiff was moderately limited in three of the functional areas, namely "understanding, remembering, or applying information," "interacting with others," and "concentrating, persisting or maintaining pace" at Step III (*id.*, PageID.76-77), the ALJ began the RFC determination by citing Plaintiff's function report for its representations of limitations in memory, completing tasks, concentration, understanding, following instructions, and getting along with others and Plaintiff's testimony about "cognitive issues" and "being out in public" (*id.*, PageID.79, 340, 117).  The ALJ also provided a lengthy explanation for why "the claimant's posttraumatic stress disorder; borderline personality disorder; depression; anxiety; cannabis use

---

[6] For example, the ALJ noted Plaintiff's January 27, 2020 posterior lumbar interbody fusion L4-S1 (*see* ECF No. 10, PageID.1109, 1153), and, on three occasions within the written decision, noted that, "after the claimant underwent her surgical procedure and despite continued reports of pain, she noted improvement in her symptoms, consistent with ongoing conservative treatment."  (*Id.*, PageID.80; *see also id.*, PageID.85, 86.)

disorder; and alcohol use disorder cause some degree of limitation, but not to the

extent alleged[,]" (*id.*, PageID.83-84), a lengthy review of the August 13, 2019

opinion of state agency psychological consultant, Rose Moten, Ph.D., finding it

"persuasive to the extent it found the claimant had a moderate restriction in

concentration, persistence, or maintaining pace and would be limited to simple

instructions," as "this is generally consistent with the overall record of evidence[,]"

(*id.*, PageID.84-85, 146-147, 150-152), and a brief review of the August 31, 2020

opinion of consultative examiner Mark Deskovitz, Ph.D., concluding a certain

portion was "unpersuasive" (*id.*, PageID.85, 974).  Finally, the ALJ concluded:

> The claimant's moderate restriction in understanding, remembering,
> or applying information and concentration, persistence, or maintaining
> pace would limit the claimant to *understanding, remembering, and
> carrying out simple instructions and tasks*.  The claimant's moderate
> restriction in interacting with others would limit the claimant to
> *occasional interaction with coworkers, supervisors, and the public*.
> The claimant's moderate restriction in concentration, persistence, or
> maintaining pace would limit the claimant to *no fast paced or
> production rate work*.

(ECF No. 10, PageID.86 (emphases added).)

Plaintiff's mental health symptoms argument is unavailing.  (ECF No. 18,

PageID.3604-3606.)  She provides multiple citations regarding her "mentally

associated symptoms" – whether to records reflecting her own reports, objective

examinations, her function report (*id.*, PageID.340), or her administrative hearing

testimony (*id.*, PageID.117).  (ECF No. 18, PageID.3604-3605.)  Yet, other than

citing the ALJ's conclusions that Plaintiff has severe mental impairments,

including "moderate limitation" in CPP (ECF No. 10, PageID.73, 77), and the RFC

finding (*id*., PageID.78), her argument "fails to engage with the ALJ's analysis of

the evidence and simply cites other evidence that [Plaintiff] claims support[s]

further restrictions[,]" (ECF No. 22, PageID.3623).  (*See* ECF No. 18,

PageID.3604-3606.)  And, to the extent Plaintiff cites the August 5, 2019

consultative examination report of Mark A. Deskovitz, Ph.D. (*see* ECF No. 18,

PageID.3604-3605 (citing ECF No. 10, PageID.972, 975)), the ALJ was not

persuaded by this opinion (ECF No. 10, PageID.85), and Plaintiff has not

challenged the ALJ's treatment of the opinion evidence.  Moreover, with reference

to notes from a November 7, 2019 PCP visit (*see* ECF No. 10, PageID.1077-1078),

the ALJ twice aptly noted:

> . . . during a PCP meeting, the claimant noted she was responsible for
> her own medication and keeping her own medical appointments.  She
> further noted she helped take care of her daughter; take care of her
> house; cook, clean, help with budgeting, paying bills, and grocery
> shopping; and read online blogs, play video games, and spend time
> with her family[.]

(ECF No. 10, PageID.77-78, 83-84.)  In sum, Plaintiff has not shown that the ALJ

"failed to connect [his] RFC finding with the evidence of the record and did not

adequately account for [Plaintiff's] deficits in [CPP]."  (ECF No. 18,

PageID.3606.)

Lastly, Plaintiff notes this Court's consideration of "limitations that result due to moderate limitations in [CPP][,]" (ECF No. 18, PageID.3606), namely: "It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work.  Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence." *Green v. Comm'r of Soc. Sec.*, No. CIV. 08-CV-11398-DT, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) (Cleland, J., *adopting report and recommendation of* Pepe, M.J.).[7]  Yet, while Plaintiff asks the Court to apply this principle to the case at bar, that decision also noted: "Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient." *Green*, 2009 WL 2365557, *10.  Here, the ALJ's hypothetical was "limited to the sedentary exertional level" with other limitations, including, "[t]he individual would be able to understand, remember, and carry out simple instructions and tasks; can have occasional interaction with co-workers, supervisors and the public [*i.e., social interaction limitations*]; and no fast paced or production rate work [*i.e., sustained concentration and persistence limitations*]." (ECF No. 10, PageID.119.)  As the Commissioner notes, "a limitation of non-production-rate work is a common and adequate limitation for those persons who

---

[7] Plaintiff seems to have mistakenly cited *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005) (Friedman, C.J., *accepting and adopting report and recommendation of* Pepe, M.J.).  (ECF No. 18, PageID.3606.)

suffer from moderate difficulties in concentration, persistence, or pace[,]" *Pruitt v. Comm'r of Soc. Sec.*, No. 14-CV-11230, 2015 WL 5730023, at *7 (E.D. Mich. Aug. 24, 2015) (Majzoub, M.J.) (referencing *Edwards*), *report and recommendation adopted*, No. 14-11230, 2015 WL 5697633 (E.D. Mich. Sept. 29, 2015) (Borman, J.).

### c.     Medication side effects

Plaintiff contends the ALJ did not evaluate and consider medication side effects in the RFC assessment.  (ECF No. 18, PageID.3606-3608.)  *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) ("The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").  To support "severe side effects from her medications[,]" Plaintiff points to:

- Her March 31, 2019 Function Report, which reflects that Rizatriptan – which Plaintiff takes for migraines – causes "sleeping" and Hydroxyzine pamoate – which Plaintiff takes for anxiety – causes "tired/dizzy."  (ECF No. 10, PageID.342; *see also id*., PageID.319.)

- An April 5, 2019 overview, which reflects that Keppra caused hallucinations.  (*Id*., PageID.2583.)[8]

---

[8] This overview appears at several points in the administrative record and seems to originate with narrative from August 8, 2018 (ECF No. 10, PageID.487-488), at which point seizures were among Plaintiff's diagnoses (*id*., PageID.543, 549), Plaintiff was seen at Henry Ford Health System (*id*., PageID.549-555), and Plaintiff started rizatriptan (MAXALT) (ECF No. 10, PageID.616, 617, 1512).

- An allergy list, dated 2020, as evidence of "headaches, fatigue, mood changes, suicidal thoughts, hallucinations, and worse depression from multiple medications." (*Id.*, PageID.2912.)

- Phani Deepthi Vadlamudi, M.D.'s February 19, 2021 progress notes, reflecting that Cymbalta caused "brain zaps." (*Id.*, PageID.3465.)

(ECF No. 18, PageID.3607-3608.)  Plaintiff maintains that "'brain zaps,' fatigue, hallucinations, tiredness, sleeping, and headaches" from "medications she must take to treat her severe impairments" would cause her to "be off task, need extra breaks, and/or miss work." (*Id.*, PageID.3608.)

Plaintiff's argument is unavailing.  As for the particular records upon which Plaintiff relies, Cymbalta (Duloxetine) and Keppra (Levetiracetam) are not listed on the "outpatient encounter medications" list within Dr. Vadlamudi's February 19, 2021 progress notes (id., PageID.3467-3469).  SSR 96-8P, 1996 WL 374184 (July 2, 1996) ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.").  To the extent Plaintiff relies upon her 2020 allergy list, the Commissioner convincingly notes that Plaintiff has not tied it "to her current medication list . . . ."  (ECF No. 22, PageID.3639.)  And, assuming that Plaintiff is still taking Rizatriptan (Maxalt) and Hydroxyzine (Vistaril, Atarax), and further assuming these medications cause Plaintiff to be sleepy, tired, and/or dizzy, the Commissioner correctly observes that Plaintiff has not tied these "alleged

28

medication side effects" to evidence concerning being off task, taking extra breaks, or being absent.  (*Id*.)

More generally, to the extent Plaintiff contends the ALJ "never considered Ms. [C.]'s severe side effects from her medications[,]" (ECF No. 18, PageID.3607), the ALJ referred to prescription pain medication when reviewing DDD records (*see id*., PageID.80) and also referred to "no side effects" within his consideration of Plaintiff's seizure disorder and migraines (ECF No. 10, PageID. 82).  More to the point, "[w]hile the ALJ was obligated to 'consider' the side effects of [Plaintiff's] medication," the ALJ "was not obliged to specifically mention that finding in the decision."  *French v. Comm'r of Soc. Sec.*, No. 15-12687, 2016 WL 3951419, at *13 (E.D. Mich. June 30, 2016) (Morris, M.J.), *report and recommendation adopted*, No. 15-12687, 2016 WL 3924111 (E.D. Mich. July 21, 2016) (Cox, J.).  Furthermore, at the administrative hearing, when the ALJ asked about pain medications, Plaintiff mentioned stomach irritation from diclofenac sodium, itching from opiates, and "other medications I'm on that make me tired as it is."  (ECF No. 10-2, PageID.108.)  *See Hale v. Comm'r of Soc. Sec.*, No. CIV. 10-10751, 2011 WL 1641892, at *3 (E.D. Mich. May 2, 2011) (Borman, J.) (finding that "the ALJ did consider the side effects of Plaintiff's medications, as required by § 404.1529(c)(3)(iv)[,]" based, in part, on administrative hearing testimony about medication side effects); *Flynn v. Comm'r of Soc. Sec. Admin.*,

No. 2:17-CV-11640, 2018 WL 5306640, at *4 (E.D. Mich. Aug. 1, 2018) (Patti,

M.J.) ("the ALJ specifically asked Plaintiff about the side effects of medication

and/or sleepiness from medication on at least three occasions."), *report and*

*recommendation adopted sub nom. Flynn v. Comm'r of Soc. Sec.*, No. 17-CV-

11640, 2018 WL 5305077 (E.D. Mich. Aug. 24, 2018) (Leitman, J.).

### d.   Seizures

After determining that Plaintiff's seizure disorder was a severe impairment,

but explaining why it did not meet the related listing (ECF No. 10, PageID.73, 75),

the ALJ proceeded to consider Plaintiff's seizures within the RFC determination

by:

- referencing her function report's description of her headaches and seizures (*see id*., PageID.335) and her testimony about seizures (*see id*., PageID.110) (ECF No. 10, PageID.79)[9]; and,

- discussing how Plaintiff's "seizure disorder and migraines cause some degree of limitation, but not to the extent alleged[,]" (*id*., PageID.81-82).

Finally, the ALJ stated that Plaintiff's "seizure disorder and migraines would limit

her to no work around hazards such as unprotected heights or unguarded, moving

machinery."  (*Id*., PageID.86.)

---

[9] Plaintiff testified that, she experienced "myoclonic seizures daily," although they
were "slowing down a little bit from the medication," and further testified that,
while she had been experiencing the bigger seizures about six times a month, "the
medication" was "slowing them down." (ECF No. 10, PageID.109-110).

Plaintiff contends her "proclivity for excessive time off task, need for extra breaks, and/or excessive absenteeism" would also be "impacted by her seizures[,]" (ECF No. 18, PageID.3608), as to which she makes three specific points, each of which is unavailing.  First, in April 2019, Plaintiff sought to "get [a] DHS form filled for work excuse due to her seizure disorder[,]" as she had quit her home health aide job since her diagnosis, and Dr. Vadlamudi "[f]illed DHS form for excuse from work for up to 6 months[.]"  (ECF No. 10, PageID.932, 936.) However, as the Commissioner responds, the ALJ found Plaintiff unable to perform her past relevant work as a home attendant (ECF No. 10, PageID.87) – a non-issue here – and a six-month excuse letter does not satisfy the "continuous period of at least 12 months[,]" 20 C.F.R. §§ 404.1509, 416.909.  (ECF No. 22, PageID.3643-3644.)  Second, Plaintiff refers to records describing her seizures as resulting in loss of awareness, body and head shaking, lasting 1-2 minutes and occurring 1-2 per week, after which she feels tired and wants to sleep (*id*., PageID.1737 [May 2019]), or reflecting the characteristic of "unresponsiveness," (*id*., PageID.3206 [February 2021]), "some with trigger and some not[,]" (*id*., PageID.3555 [May 2021]).  And, finally, Plaintiff cites her August 16, 2021 testimony that she has "myoclonic seizures daily[,]" "throughout the day[,]" "[t]hey're slowing down a little bit from the medication, but [she] still ha[s] the, like, jolts and the tics[,]" where her "arms will, like, you know, jolt all of a

31

sudden." (*Id*., PageID.109.) Yet, these citations to medical records and testimony do not explain what is errant about the ALJ's conclusion that "seizure disorder and migraines cause some degree of limitation, but not to the extent alleged." (*See id*., PageID.81-82.) Nor has Plaintiff, as mentioned above, successfully challenged the ALJ's finding that "claimant's statements concerning the intensity, persistence and limiting effects of [her reported] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (ECF No. 10, PageID.79.) "Our task is not to reweigh the evidence. That is solely the province of the Secretary." *Mullins v. Sec'y of Health & Hum. Servs.*, 680 F.2d 472, 472 (6th Cir. 1982)) (citation omitted).

### F.    Conclusion

Finally, Plaintiff claims the ALJ violated SSR 85-15 "by not considering the effects of the above-mentioned limitations[,]" which she supports with a citation to *Rabbers, supra..* (ECF No. 18, PageID.3611-3612.) The Court should agree with the Commissioner that this argument suffers from "lack of development[,]" (ECF No. 22, PageID.3650), and, therefore, declines to consider Plaintiff's *Rabbers* argument. And, in any case, I am satisfied that the ALJ did extensively consider the effects of the above-mentioned limitations. Moreover, SSR 85-15 concerns "the medical-vocational rules as a framework for evaluating *solely nonexertional impairments*[,]" *e.g.*, mental, postural-manipulative, hearing, and visual

32

impairments, as well as environmental restrictions.  SSR 85-15, 1985 WL 56857 (S.S.A. 1985) (emphasis added).  Here, Plaintiff has exertional and nonexertional impairments.  (*See*, *e.g.*, ECF No. 10, PageID.78.)  *See also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008) ("But SSR 85–15 does not apply to Jordan, who suffers from both exertional and nonexertional limitations."); *Doneworth v. Shalala*, 76 F.3d 378 (6th Cir. 1996) (agreeing that "SSR 85–15 does not apply to claimant since he has both exertional and nonexertional limitations and SSR 85–15 applies to cases where only a nonexertional limitation is present.").

Plaintiff has the burden of proof on her statement(s) of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Nonetheless, as detailed in the foregoing discussion, Plaintiff has not shown legal error in the ALJ's RFC determination.  Accordingly, for the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment or remand (ECF No. 18), **GRANT** Defendant's motion for summary judgment (ECF No. 22), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

33

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must precisely recite the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  February 15, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

34